United States *v.* Robert Reiner, Inc.

**No. 6440.**—Invoices dated Einsiedel, Germany, September 30, 1938, etc.
Entered at New York, N. Y., October 25, 1938, etc.
Entry No. 748801, etc.

Third Division, Appellate Term

(Decided October 15, 1946)

*Paul P. Rao,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the appellant.
*Benjamin A. Levett* (*Benjamin A. Levett* and *Meyer Ohlbaum* of counsel) for the appellee.

Before Cline, Keefe, and Ekwall, Judges

Cline, Judge: This is an application for a review of the findings of the trial court, sitting in reappraisement, as to the proper dutiable values of two types of hosiery machines, one used in the production of the foot portion of hosiery, known as a "footer" and the other used in the production of the leg portion of hosiery, known as a "legger." The machines were entered on the basis of United States value and

were appraised on the basis of cost of production. The single judge found the proper basis of valuation to be the United States value.

It was agreed at the trial that no foreign or export value existed, and plaintiff conceded that "if there be no United States value and the cost of production be taken that the appraiser's figures are correct," and that in the calculation of United States value no allowance for profit should be made since none was deducted on entry.

The following machines are involved in this appeal:

| Reappraisement No. | Date of Exportation | Machine |
| --- | --- | --- |
| 152292–A | Oct. 12, 1938 | 28-section, 42-gauge footer |
| 152293–A | Jan. 5, 1939 | 28-section, 45-gauge legger |
| 152294–A | Mar. 10, 1938 | 24-section, 45-gauge legger |

The Government's chief contention is that no prototype machines were available for offer and sale in the United States at the time of exportation of the imported merchandise and that, therefore, the trial court erred in finding that the proper basis for determining value was the United States value.

John A. Vollmann, office manager of the importing corporation, described the imported machines, stating that they are used to manufacture full-fashioned hosiery, the legger to make the leg and the footer to make the foot; that they come in different gauges and with a different number of sections; that the gauge indicates the fineness of the stockings, and the number of sections indicates the number of stockings that can be manufactured at one time.

Mr. Vollmann testified that his firm had a sort of standing arrangement with the manufacturer to deliver four or five machines a month; that the machines were purchased for stock and were either left in Germany at the factory or in warehouse or in the port of exit or were held at the importer's place of business in this country.

He stated that the firm sometimes had several machines available and sometimes had none; that when an order was received for one not in stock, they would try to replace it with a different sized machine or would wire to the factory to send another machine suitable for the customer's purposes; that when a machine came over here, it was not earmarked for a particular customer, but the firm could dispose of it as it pleased. The witness stated further that machines identical with those involved in these cases had been imported during the years previous to 1938 and that they were sold at uniform prices.

Mr. Vollmann's testimony as to machines available on the dates of exportation of the merchandise herein may be summarized as follows: As to reappraisement No. 152293–A, they had available up to January 9, 1939, a 24-section, 45-gauge machine imported October 14, 1938, which was identical with the imported machine except that it

had only 24 sections. As to reappraisement No. 152294–A, they had available a 28-section, 42-gauge footer entered March 5, 1938, but this machine differed in gauge and section from the imported machine and was a footer instead of a legger. As to reappraisement No. 152292–A, they had a 24-section, 45-gauge legger entered August 12, 1938, but this also differed from the imported machine in gauge and section and was a legger instead of a footer. On cross-examination he testified that leggers and footers could not be used interchangeably; that the machines were differently priced, and that machines with different numbers of sections were differently priced.

There were received in evidence, as plaintiff's collective exhibit 4, yellow work sheets attached to the entries showing the manner in which the United States value was computed. Mr. Vollmann testified that he had made the computation and furnished it to the broker, and that the basic prices thereon were the uniform prices at which previously imported machines of each type had been sold. The witness also stated that as a rule three, six, or nine machines were sold at a time but that the price was always the same regardless of the quantity.

Defendant offered in evidence photostatic copies of two reports of Customs Agent Dougherty, one dated February 1, 1943, and the other dated March 26, 1943. An examination of these reports and the exhibits attached thereto shows that hosiery machines of various types were being imported at the rate of from one to four a month and were sold with few exceptions at uniform prices under contracts dated from September 14, 1937, to April 29, 1939.

The trial court held that the United States value of each machine could be found on the basis of the price at which previously imported identical machines were sold and delivered at or near the time of exportation, stating that it was not essential that prototype merchandise be available for offer on the date of exportation, citing *United States* v. *New York Merchandise Co., Inc.*, 31 C. C. P. A. 213, C. A. D. 274.

The record establishes that the merchandise herein is imported pursuant to order and contract; that little or none is carried in stock; that machines are not assigned to particular customers until arrival in this country; and that the different types of machines have been sold over a period of time at uniform prices.

The record also shows that as to the machine covered by reappraisement No. 152292–A, a 28-section, 42-gauge footer, exported October 12, 1938, an identical machine arrived here on September 28, 1938, and was delivered to the Pequest Hosiery Mills, Inc., under contract No. 236 at the same price as the entered value of the machine in the instant case. As to the machine covered by reappraise-

ment No. 152293-A, a 28-section, 45-gauge legger, exported January 5, 1939, there was available from October 14, 1938, to January 9, 1939, a *24*-section, 45-gauge legger at a price different from that of the imported merchandise. The record does disclose that 28-section, 45-gauge leggers were ordered at the same price as the machine herein under contract dated December 12, 1938, for delivery in March 1939 and subsequently. As to the machine covered by reappraisement No. 152294-A, a 24-section, 45-gauge legger, exported March 10, 1938, the record does not point out any identical machine imported prior to that date but does disclose sales of machines subsequently imported and sold under contracts at the same price as the machine here involved.

Section 402 (e) of the Tariff Act of 1930 prior to its amendment by the Customs Administrative Act of 1938 defined United States value as follows:

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

The only change made by the amendment was the insertion of the words "for domestic consumption" after the words "freely offered for sale." The entry in reappraisement No. 152294-A was made prior to the effective date of the Customs Administrative Act of 1938, and the others were made subsequent thereto.

The Court of Customs and Patent Appeals has held that United States value can be established only by the price at which such or similar *previously imported* merchandise was freely offered for sale. *United States* v. *G. W. Sheldon & Co.*, 23 C. C. P. A. 245, T. D. 48108; *The Stern Hat Co.* v. *United States*, 26 C. C. P. A. 410, C. A. D. 48; *United States* v. *Collin & Gissel*, 29 C. C. P. A. 96, C. A. D. 176. However, in the recent case of *United States* v. *New York Merchandise Co., Inc., supra,* the court said (p. 218):

The law upon the construction of section 402 (e), *supra,* is, we think, fairly well settled, and without quoting extensively from the foregoing cited cases, we think the following principles applicable to United States value are definitely settled: First, the value of the imported merchandise to be arrived at must be based upon the price at which such or similar *previously imported* merchandise is freely offered for sale to all purchasers, packed ready for delivery, etc., at the time of exportation of the imported merchandise. Second, the phrase "at the time of exportation" does not necessarily mean the hour or the day of exportation,

but a time near enough to the date of exportation and under such circumstances as will reflect the price of the goods on the date of exportation. It is obvious that no definite period prior or subsequent to the exportation can be fixed as a standard for all cases. A fluctuating market, which might be brought about by many reasons, might make a date of sale or offer in this country prior or subsequent to the date of exportation an improper one to accept in determining the question here involved. On the other hand, the proof might show a steady, unvarying market or other conditions which would make a date months removed from the date of exportation a proper one to reflect what the price was on the date of exportation. [Italics quoted.]

While this statement indicates that sales subsequent to the date of exportation may be considered where they reflect the price of the goods on that date, we do not think it implies that the sales price of *subsequently imported* merchandise may be used as a basis for finding United States value. This is borne out by the fact that the claimed prototype in that case was merchandise previously imported and held in warehouse on the date of exportation of the involved merchandise.[1]

Therefore, the sales of subsequently imported machines in reappraisement No. 152293–A and reappraisement No. 152294–A cannot be considered as establishing United States value, although they may be helpful in determining whether or not a steady market existed.

Moreover, we do not think that a *24*-section, 45-gauge legger can be considered a prototype of the *28*-section, 45-gauge legger in reappraisement No. 152293–A. The prices of the two were different and no evidence has been submitted showing how the price of a 28-section machine could be deduced from the known price of a 24-section machine.

The only evidence as to United States value of the machines in reappraisement No. 152293–A and reappraisement No. 152294–A is the testimony of the witness Vollmann that he had imported identical machines during the years previous to 1938 and had sold them here at uniform prices which were the same as the gross prices used on the entries herein. However, no particular sales were mentioned and there is nothing to show the length of time between the sales and the respective dates of exportation herein. It was held in the case of *United States* v. *Collin & Gissel, supra,* that sales made during the latter part of 1933 and up to March 16, 1934, could not be considered in connection with merchandise exported on July 11, 1934, but there the price had changed in June 1934 from $6,000 per machine to $5,500 per machine. The merchandise in question was therefore treated as a first importation.

As was pointed out in *United States* v. *New York Merchandise Co., Inc., supra,* what is "near" the date of exportation is dependent upon

---

[1] No United States value was found in that case. The merchandise consisted of electric-light globes used in sets of five colors as Christmas-tree ornaments. The stock on hand in warehouse consisted of red lamps only and there was testimony that the red alone had no value and that they had been committed against orders and would be sent out when the other colors arrived.

the circumstances of each particular case. While the evidence in the instant case is meager, there is uncontradicted testimony that there were prior sales of identical merchandise at uniform prices. Since sales subsequent to the date of exportation were also made at the same prices, we think there has been established the price at which such or similar merchandise was freely offered for sale in the principal market of the United States to all purchasers at the time of exportation of the imported merchandise.

As to reappraisement No. 152292–A, it was shown that an identical machine previously imported was sold here 14 days before the exportation date of the imported merchandise. We think that is sufficiently near the date of exportation to form a basis for the determination of United States value, since there was proof of an unvarying market.

From a consideration of the record before us and for the reasons stated we find as facts:

1. That at the time of exportation of these machines no foreign or export value existed.

2. That said merchandise was freely offered for sale, packed ready for delivery in the principal market of the United States—Weehawken, N. J.—to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with statutory allowances, at the price represented by the entered value in each case.

From such facts, we hold that the decision of the trial court holding that there is a United States value for the imported merchandise and that such value is the entered value in each case is sustained. Judgment will be entered accordingly.